IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natalie Couch | No. CV-26-00437-PHX-KML (MTM) |
| Petitioner, | |
| v. | **ORDER** |
| Eric Rokosky, et al., | |
| Respondents. | |

On February 6, 2026, Petitioner, through counsel, filed a habeas corpus petition under 28 U.S.C. § 2241 seeking release from immigration detention. (Doc. 1). By Order dated February 11, 2026, the Court ordered Respondents to show cause why the Petition should not be granted. (Doc. 4). The Petition is now fully briefed. (Docs. 7, 11). For the reasons that follow, the Court will grant the Petition and order that Petitioner be immediately released from custody.[1]

**I.   Background**

Petitioner was born out of wedlock in 1971 in what was then West Germany to a Yugoslavian mother and West German father; as a result, she obtained Yugoslavian citizenship through her mother at birth, but did not obtain West German citizenship. (Doc. 1 at 6).

Petitioner entered the United States in 1992 and became a permanent resident in

---

[1] Petitioner has also filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 10). Because the Court will grant the Petition, it will deny the motion as moot.

1993. (Doc. 7-1 ¶ 7).[2]  After a federal criminal conviction, removal proceedings were initiated against Petitioner on May 20, 2024. (*Id.* ¶¶ 13, 15). On January 14, 2025, an immigration judge (IJ) ordered Petitioner removed to Germany; Petitioner waived appeal and the order became final that same day. (*Id.* ¶ 21). On February 3, 2025, ICE mailed a travel document request to the Consulate of Germany in Los Angeles, California; no response has been received to the request. (*Id.* ¶ 24). On March 24, 2025, ICE mailed a Request for Acceptance of Alien to the Embassy of Serbia; the next day the Serbian Embassy acknowledged the request and indicated it would "be forwarded to the Serbian national authorities at their capital." (*Id.* ¶¶ 25-26). On April 3, 2025, the Serbian Embassy advised that additional information and documents were needed; ICE forwarded a copy of Petitioner's birth certificate and "the additional information requested" that same day. (*Id.* ¶ 27). Respondents do not indicate that any further communications with Serbia have occurred since that date.

On August 27, 2025, DHS moved to reopen Petitioner's immigration proceedings "to add [Serbia, Montenegro, and Bosnia-Herzegovina] as alternative for removal." (*Id.* ¶ 29; *see also* Doc. 1-1 at 15-17). The motion was granted, and on September 3, 2025, the IJ issued a revised order directing that Petitioner be removed to Germany, or, in the alternative, to Serbia, Montenegro, or Bosnia Herzegovina. (Doc. 7-1 ¶ 31).[3]  Respondents do not identify any efforts to effect Petitioner's removal since the date of the revised removal order.

As of the date of this Order, Petitioner remains detained by ICE.

**II.   Legal Standard**

Petitioner's continued detention is governed by 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001). Under § 1231(a)(1), the Government has 90 days in which to

---

[2] This status was "terminated" in 1995 due to Petitioner's "failure to remove the condition on her residence." (*Id.* ¶ 8).

[3] Respondents' Declaration (Doc. 7-1) mis-numbers its paragraphs, skipping from paragraph 29 to 31 (with no paragraph 30), and then repeating paragraphs 27-29 as paragraphs 33-35. The Court refers to the paragraphs here as they are numbered in the Declaration.

remove an alien once a removal order becomes final. Detention during this removal period is mandatory. 8 U.S.C. § 1231(a)(2). If the Government is unable to effect removal within the 90-day removal period, however, continued detention of aliens such as Petitioner becomes discretionary. 8 U.S.C. § 1231(a)(6). That discretion, however, is not unfettered, and indefinite detention is not permitted. *Zadvydas*, 533 U.S. at 689 (8 U.S.C. § 1231(a)(6) "does not permit indefinite detention."). This is not to say that every alien like Petitioner must be released once the 90-day removal period has expired. 533 U.S. at 701. Rather, the Supreme Court in *Zadvydas* recognized an implicit post-§ 1231(a)(2) period in which continued detention is "presumptively reasonable" and does not violate the Fifth Amendment. *Id.* The *Zadvydas* Court concluded that this "presumptively reasonable" period extends for no more than 6-months once an order of removal becomes final (including the 90-day mandatory detention period under § 1231(a)(2)). *Id.* Thereafter, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If, after considering the evidence, the Court finds that "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699.

**III. Discussion**

Here, Petitioner has now been detained beyond the "presumptively reasonable" period articulated in *Zadvydas*. As such, to obtain relief Petitioner must first provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and, if she does so, Respondents "must respond with evidence sufficient to rebut that showing." *Id.*

Petitioner argues that she is effectively stateless because neither West Germany—where she was born—nor Yugoslavia—where she was a citizen—still exist. Petitioner further provides evidence to support that Respondents have been unable to effectuate her removal to Germany. (*See* Doc. 1-1 at 15 (DHS motion stating that "DHS was unable to

effectuate [Petitioner's] removal to Germany").)[4]  Petitioner further indicates that, since the IJ's revised order on September 3, 2025, she has "contacted ICE weekly regarding her deportation" but been told "there was 'nothing on the radar as far as removal goes.'"  (Doc. 1 at 8-9).  Petitioner argues that, to date and more than a year after she was initially taken into custody, "ICE has not confirmed a country of removal or a removal date."

The evidence provided by Respondents indicates only that on February 3, 2025, ICE mailed a travel document request to the Consulate of Germany in Los Angeles; on March 24, 2025, ICE mailed a Request for Acceptance of Alien to the Embassy of Serbia; and, on April 3, 2025, ICE forwarded a copy of Petitioner's birth certificate and additional information to the Embassy of Serbia.  No evidence has been provided that ICE has made any other efforts to effectuate Petitioner's removal.

On this record, the Court concludes that Petitioner has shown "good reason" to believe that there is no significant likelihood of removal in the reasonably foreseeable future.  It has been more than a year since ICE last communicated with the government of Germany, and DHS has subsequently indicated that it has been "unable to effectuate [Petitioner's] removal to Germany."  Similarly, it has been nearly a year since DHS last communicated with the government of Serbia.  DHS has apparently not even contacted the governments of Bosnia or Montenegro regarding acceptance of Petitioner.

For the same reasons, the Court concludes that Respondents have failed to rebut Petitioner's showing.  Put simply, to date Respondents have failed to even identify a country that will accept Petitioner for removal, much less that removal is significantly likely to occur in the reasonably foreseeable future.  Respondents' contention that "[s]o long as progress, however slow, is being made towards an alien's removal, her continued detention is in accord with due process under *Zadvydas*" is both a misconstruction of what

---

[4] This inability was apparently what prompted DHS to seek to reopen Petitioner's immigration proceedings to have the removal order revised to include the former Yugoslav countries as alternative removal destinations.  (*Id.* at 16 ("These three countries [Bosnia, Serbia, and Montenegro] need to be listed on the Immigration Judge's Order of Removal as additional removal countries, because without the countries listed on the Immigration Judge's Order, these countries will not consider accepting [Petitioner] for removal.").)

- 4 -

*Zadvydas* requires and unsupported by the evidence. (Doc. 7 at 3 (simplified).) There is no evidence Respondents have made any effort, let alone "progress," towards Petitioner's removal in nearly a year.

The Supreme Court held in *Zadvydas* that as the period of detention grows, "what counts as the 'reasonably foreseeable future' would have to shrink." 533 U.S. at 701. As noted, Petitioner has now been detained beyond the presumptively reasonable period identified in *Zadvydas*, and having provided "good reason" to support that her removal is not significantly likely to occur in the reasonably foreseeable future, the burden shifts to Respondents to rebut that showing with sufficient evidence. *Id.* Respondents have failed to do so. Accordingly, the Court finds that Petitioner's continued detention is in violation of the Fifth Amendment and will grants the Petition.

**IT IS THEREFORE ORDERED** that:

(1) The Petition for Habeas Corpus (Doc. 1) is **granted**.

(2) Respondents must **IMMEDIATELY RELEASE** Petitioner from custody.

(3) Within **48 HOURS** of this Order, Respondents must file a Notice of Compliance.

(4) Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 10) is **denied as moot**.

(5) The Clerk of Court must enter judgment accordingly, and close this case.

Dated this 3rd day of March, 2026.

Honorable Krissa M. Lanham
United States District Judge